No 2290

Second Circuit

## REID v. MISSOURI PACIFIC RAILROAD COMPANY

(November 7, 1925, Opinion and Decree)
(April 19, 1925, Rehearing Refused)

*(Syllabus by the Editor.)*

**1. Louisiana Digest—Railroads—Par. 58.**

It is the duty of the employees of a railroad company to use ordinary care and precautions to prevent injury to persons or property at crossings even though these crossings are used very little.

**2. Louisiana Digest—Railroads—Par. 61.**

Making a flying or running switch is particularly dangerous under any circumstances. Therefore, where a gondola car, while making a flying switch, collided with a Ford truck on a crossing, employees of the railroad are negligent, even though the crossing was used very litle.

**3. Louisiana Digest—Railroads—Par. 63, 65.**

It is the duty of a co-laborer riding on an automobile truck with the driver to avoid danger wherever possible; therefore, where the truck is negligently backed on a railroad crossing, this negligence will be imputed to the co-laborer riding on the truck next to the driver, as well as to the driver of the truck.

**4. Louisiana Digest—Railroads—Par. 64.**

It· is not only the duty of . one about to cross a railroad track to stop, look and listen once, but it is also his duty to continue to keep a watch of the track.

**5. Louisiana Digest—Negligence—Par. 25.**

Contributory negligence on the part of the plaintiff defeats recovery.

**6. Louisiana Digest—Railroads—Par. 66.**

The doctrine of last clear chance does not apply to the train crew where there is no evidence to show that they were cognizant of the peril of the driver of the automobile truck and could have avoided the collision with it.

**7. Louisiana Digest—Evidence—Par. 42; Railroads—Par. 80.**

Appeal from the Ninth Judicial District Court of Louisiana, Parish of Rapides. Hon. John A. Williams, Judge.

Action by Dempsey C. Reid against the Missouri Pacific R. R. Company for damages for personal injuries arising out of a collision between a gondola car of the railroad and a Ford truck.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Overton & Hunter, of Alexandria, attorneys for plaintiff, appellee.

Hudson, Potts, Bernstein & Scholars, ·of Monroe, attorneys for defendant, appellant.

ODOM, J.   Plaintiff brings this suit against the defendant to recover damages for injuries which he received when a gondola or coal car on defendant's track at Tioga, Louisiana, . collided with a truck in which he was riding.

At the time of the accident, Reid, the plaintiff in this case, was sitting on the seat of a truck by the side of Sidney A. Townsend, who was driving it. Reid and Townsend were both seriously injured and each brought suit against the defendant company. Their injuries grew out of the same accident and for the purposes of the trial the two cases were consolidated in the District Court and are submitted on the same testimony. All the conditions, facts and circumstances surrounding the accident are detailed and discussed in the

opinion in the Townsend case, this day decided; therefore, it is not necessary to detail and discuss them in this opinion.

The difference between plaintiff's case and that of Townsend is that Townsend was the driver of the truck and Reid was sitting on the seat by his side at the time of the accident.

We held in the Townsend case that the defendant company was negligent in the handling of its cars at the time of the accident but that Townsend was guilty of such contributory negligence as to bar his recovery. The question we must determine in this case is· whether Reid, though not the driver of the truck, was also guilty of such negligence as to bar his recovery.

It is urged in behalf of the plaintiff, Reid, that even though it should be held by the court that Townsend, the driver of the truck, was guilty of contributory negligence, his negligence cannot be imputed to the plaintiff.

But that is not the question in this case, for that point is conceded by counsel for defendant; but it is urged on behalf of the defendant that Reid himself, though not the driver of the truck, was guilty of such negligence as to bar his recovery.

The facts necessary to be narrated in connection with this case are as follows:

Townsend and Reid were both employees of the Lee Lumber Company and were working at its commissary at Tioga, Louisiana.

The Lee Lumber Company maintains an ice house from which it distributes ice to its customers in a Ford truck. Townsend had charge of the delivery of the ice and drove the truck. For some reason or other it was decided that Reid should take over the business of delivering the ice, and on the day of the accident he accompanied Townsend so as to familiarize himself with the routes and the customers. He and Townsend went together on the truck to the ice house, Townsend driving. They loaded the ice on the truck. Townsend got on the truck on the driver's seat, which is on the left-hand side. Reid cranked the engine and got on the truck on the driver's seat on the right-hand side of Townsend. Townsend then proceeded to back the truck over the railroad crossing where the accident occurred.

Reid and Townsend both say that when the rear wheels of the truck struck the plank approach to the crossing Townsend stopped the truck momentarily, according to Townsend's testimony, and about five seconds, according to Reid's testimony, and that they both looked up and down the track and listened but did not see or hear cars approaching. Townsend then backed the truck to the railroad track, where it was struck by the gondola or coal car, causing the injury.

In our opinion in the case of Townsend versus the same defendant, we have fully set forth our reasons for holding that Townsend was negligent, and the question arises whether Reid also was negligent.

Reid, as stated, was on the seat to the right of Townsend. The truck was open, so that he could see to the right of him. There were no curtains to obstruct his view. The cars which struck the truck came from down the track, from the north, and struck the truck on the north side—the side on which Reid was sitting. Townsend was sitting on the opposite side of the truck from which the cars were coming and therefore had less opportunity of seeing up the track in the direction from which the cars were coming than did Reid.

Reid says that when the rear wheels of the truck reached the west edges of the plank approach to the crossing, Townsend stopped the truck for as much. as five

seconds and that he, Reid, looked both ways, up and down the track, and that he listened, but neither saw nor heard the approaching cars. He says the engine of the truck was making considerable noise, which probably prevented his hearing the cars.

The testimony shows that from the seat occupied by Reid at the time the truck was stopped he could see up the railroad track in the direction from which the cars were coming a distance of only eighty feet, and that further view from the truck was obstructed by the corner of the barber-shop.

The testimony further shows that at a point only a few feet further back the track could have been seen from the point where Reid was sitting for a distance of some two hundred and fifty or three hundred feet; but Reid says he did not look up the track again.

From the time he first looked up and down the track he says he looked straight in front of him; that he does not know what he was looking at but that he was looking straight to the front while Townsend was manipulating the truck over the crossing.

In the Townsend case we held that Townsend was negligent in not seeking a view of the track at a point where he could see, and we found that if he had looked a second time or at any time after he first looked he could have seen and averted the danger. The same can be said of Reid. He was sitting at a place where his view of the track to the right—the direction from which the cars were coming —was unobstructed; when he did look he saw that he could see but a short distance up the track on account of the barber-shop building; but if he had looked again after the truck moved further back he would have had an unobstructed view of the track for almost the entire length of it and could, of course, have seen the approaching cars. But according to his own testimony he did not see the cars until the moment they hit the truck, notwithstanding the fact that they hit the truck on the side where he was sitting. There is no question but that the accident could have been averted by Reid if he had continued to look.

But counsel contend that it was not Reid's duty to look, because he was not the driver.

We do not think that under the circumstances of the case Reid was absolved from all duty and responsibility to keep a lookout for his own safety. He was not on the truck as Townsend's invited guest, nor was he a passenger for hire. He and Townsend were co-laborers engaged in a joint enterprise. He had helped load the truck and had cranked the engine of the truck to start it and, after getting into the truck, he says, he did actually look up and down the track and listen. That fact shows that he realized that he should render some assistance at least in getting the truck over the crossing and that he should exercise some degree of care for his own safety. The fact that he looked and listened, as he says he did, shows that he was not relying solely upon Townsend's making a safe drive over the crossing. He knew that this was a dangerous crossing and was aware of the necessity for taking every precaution. He was sitting at a place on the truck where he could see and could have protected himself if he had used ordinary diligence.

Learned counsel say that negligence on the part of the chauffeur is not imputable to a passenger, and they cite the following Louisiana cases in support of that doctrine.

Peterson vs. N. O. Ry. & L. Co., 142 La. 835, 77 South. 647;

Daull vs. N. O. Ry. & L. Co., 147 La. 1012, 86 South. 477.

Luke vs. M. L. & T. R. & S. S. Co., 147 La. 30, 84 South. 483.

Jacobs vs. Jacobs, 141 La. 272, 74 South. 992.

Broussard vs. Louisiana & W. Ry. Co., 140 La. 517, 73 South. 606.

Churchill vs. Texas & Pacific Ry. Co., 151 La. 726, 94 South. 314.

In Peterson vs. N. O. Ry. & L. Co., supra, the plaintiff was employed by one Kuhne, who was an employee of a brewing company. His wages were paid by Kuhne. Kuhne was driving a truck and the plaintiff was sitting by his side. The truck was struck by a trolley car of the defendant railway company resulting in injury to the plaintiff. The court found that the motorman of the trolley car was negligent in running his car at a high rate of speed and that he had the last clear chance to avoid the accident. It also found that there was no negligence on the part of Kuhne in trying to cross the track as he did; and the court said:

"If he was guilty of contributory negligence in that respect, it would not interfere with plaintiff's right to recover damages from the railway company for the negligence of the motorman, for two reasons, viz.: First, because the motorman had the last clear chance to avoid the accident; and second, because negligence on the part of Kuhne could not be imputed to the plaintiff. He was no more responsible for any negligence that Kuhne might have been guilty of than if he, the plaintiff, had been a passenger for hire."

The question of negligence on the part of the plaintiff was not raised and was not an issue in the case. The court found that Kuhne, the driver of the truck, was not negligent, but found for plaintiff because the motorman was negligent and had the last clear chance to avoid the accident.

True, the court did say that even if the driver of the truck had been guilty of contributory negligence such negligence could not be imputed to the plaintiff who was no more responsible, the court said, for the negligence of the driver than if he had been a passenger for hire; but as stated, the point whether a passenger on a motor vehicle can himself be guilty of such contributory negligence as to bar his recovery was not raised and was not decided by the court.

In the case of Daull vs. N. O. Ry. & L. Co., supra, this point was not raised. Miss Cuneo, one of the plaintiffs, was riding on the front seat of Rev. Daull's automobile as his invited guest. There was a collision between the automobile and a street car in which the Rev. Daull and Miss Cuneo were both injured. The court found that both the Rev. Daull, the driver of the automobile, and the motorman were guilty of negligence, and on the original hearing the court said:

"It does not appear to have been contended in either the argument or briefs, that the right of Miss Cuneo to recover is any stronger than that of Rev. Daull, and we see no reason, in this instance, why it should be."

And her demands were rejected. But the court, on rehearing, adhered to its former finding that both the driver of the automobile and the motorman were negligent, and said:

"But Miss Cuneo was a guest in the automobile, not charged with its management, and therefore not participating in the negligence of the driver."

And held for plaintiff, Miss Cuneo, but rejected Rev. Daull's demands.

In the case of Broussard vs. Louisiana Western Ry. Co., 140 La. 517, 73 South. 606, supra, the plaintiff's husband was a passenger for hire. The court held that the chauffeur was guilty of contributory negligence and said:

"Wright must be disconnected with that negligence before plaintiff can recover.

"He is so disconnected if he was a passenger for hire and had reason to assume that the chauffeur was competent."

Wright was on the rear seat of the car. The curtains had been taken down and there was nothing to prevent Wright from seeing the approaching train if he had been looking; and the contention was made that he should have been looking and have warned the chauffeur, and the plaintiff cited the case of Dixon vs. V. S. & P. Ry. Co., 139 La. 329, 71 South. 527, where the court held, in effect, that a passenger on the front seat of an automobile is under the same legal obligation as the chauffeur to be observant.

The court said that case had no application because those in the automobile in the cited case were not passengers for hire and that Wright was not on the front seat, and it questioned the soundness of the ruling of the court in the Dixon case. The court did not overrule the Dixon case but differentiated it from the case under consideration.

In the case of Luke vs. M. L. & T. R. & S. S. Co., 147 La. 30, 84 South. 483, supra, plaintiff's daughter was killed while riding as an invited guest on a motorboat, and the court said:

"We do not rest the decision of this case on the doctrine of contributory negligence, on the part of plaintiff's daughter, but upon the conclusion that there was no negligence on the part of the employees of the defendant company. If there was any negligence on the part of the young men who were operating the gas boat, it was not attributable to plaintiff's daughter. One who travels as an invited guest in a boat or vehicle is not responsible for the negligence of the person who operates the boat or vehicle."

The defendant cited the case of Dixon vs. V. S. & P. Ry. Co., supra, as maintaining that contributory negligence on the part of the driver of a vehicle is attributable to an invited guest riding therein, but the court said that the obiter dictum in the Dixon case was in effect overruled in the case of Jacobs vs. Jacobs, supra, and Broussard vs. Louisiana Western Railway Co., supra.

The case of Jacobs vs. Jacobs, 141 La. 285, 74 South. 992, supra, cited by plaintiff, is not in point, for in that case the court had under consideration the question of the duty and responsibility of the driver of an automobile to an invited guest.

In each of the cited cases, except that of Peterson vs. N. O. Ry. & L. Co., 142 La. 335, 77 South. 647, the court had under consideration the question as to whether the negligence of the driver of a vehicle or a motorboat was imputable to an invited guest or a passenger for hire, and from these decisions it will be seen that it is definitely settled that it is not.

But that is not the question to be determined in the case at bar.

Reid himself is charged with negligence.

While our court has definitely decided that the negligence of the driver or chauffeur is not imputable to an invited guest or passenger for hire, it has never held that such invited guest or passenger for hire cannot by his own contributory negligence bar his right of recovery, but, on the contrary, has very strongly intimated that he may.

In the case of Churchill vs. Texas & Pacific Ry. Co., 151 La. 726, 94 South. 314, supra, the court said:

"Granting that Hayslip, the driver of the automobile, was guilty of negligence in approaching the crossing without slack-

ening his speed and attempting to beat the train across, should this defeat plaintiff's right to recover for the death of his father, who was the guest of Hayslip? Under the jurisprudence of this court, it would not, unless the circumstances were such that the deceased could be charged with negligence of his own.

"Churchill, not having charge of the operation of the machine, was not required to keep a lookout for danger, but could rely upon the discharge of that duty by the driver, who was responsible for its operation; and it not appearing that the deceased saw the approaching train until almost the instant of the collision, and, having shouted the warning as soon as it was discovered, we do not find that he was guilty of negligence."

In the last cited case, the plaintiff was an invited guest in an automobile driven by his son.

In the case of Leopold vs. Texas & Pacific Ry. Co., 144 La. 1000, 81 South. 602, Doctor Leopold was a passenger in an automobile with his son who was driving. They approached a railroad crossing at a speed of about fifteen miles an hour but slowed down to about eight miles an hour. Having struck a sandbed in the road and the engine having stopped running, the son got out and cranked it. Doctor Leopold testified that he looked up and down the track and listened, and mentioned to his son that it was about train time; but he neither saw nor heard the train approaching; then they started on across the track; but:

"That he never looked any more for the approach of a train, for the reason that his attention was attracted to his son's manipulation of the car, as the latter had been away from home several months, and he was afraid the son would not be able to operate it readily."

The son drove the car upon the track and it was struck by a train on the defendant's road.

The court found that the defendant company was negligent in permitting the crossing to get in bad condition and permitting obstructions to grow up on its right of way, so as to obstruct the view at such a dangerous place, and proceeding, the court said:

"These conditions placed upon both parties the duty of exercising extreme care at this crossing; and, inasmuch as Doctor Leopold admits that he never looked any more after stopping until the train was almost upon him, we must conclude that he, too, was guilty of negligence."

And the court said further:

"Some effort is made to excuse his failure to look again on account of the condition of the crossing, but the doctor says it was his fear that his son did not remember fully how to operate the car, on account of his absence. Be that as it may, he admits that he knew it was about train time, having mentioned it to his son, and the duty to look out for the train was far more important than the matter mentioned. He was not driving himself, so that he was compelled to have his attention on the car."

The rule which we think should apply in cases of this kind is set forth in 29 Cyc. 561, as follows:

"Notwithstanding the fact that the negligence of the driver will not be imputed to a passenger, yet it is necessary that the passenger himself must exercise ordinary care. And the rule denying the imputation of the negligence of the driver to the passenger has no application where such passenger has an opportunity to discover the danger, it being his duty in such case to discover and avoid it. While the passenger is not required to exercise the same watchfulness as the driver, he cannot rely implicitly on the care of the driver when in a position to see. No recovery can be had where the passenger acquiesced or participated in the negligent acts of the driver, or had knowledge of the danger and accepts the risk to be encountered."

The Leopold case alone is sufficient authority for holding that the plaintiff in the case at bar cannot recover. In that case, Doctor Leopold knew of and appreciated the danger. He was not in charge of the automobile but was in a position to see. He seems to have realized that some duty rested upon him for he did actually look and listen but he did not continue to do so.

So, in the instant case, Reid knew the danger of backing over this crossing. He realized, as did Doctor Leopold, that some duty devolved upon him, for he says he looked and listened. He knew that it was dangerous to back out over this crossing, and therefore knew that it would be negligence for the driver of the truck to fail to observe ordinary precautions, and, as before stated, Reid was not Townsend's invited guest on the truck, nor was he a passenger for hire; he and Townsend were co-workers and Reid assisted in loading the truck and cranked the engine in order to get it started.

And then if it be said that it was not Reid's duty to look and listen, which is not true under the circumstances of this case, yet knowing the danger, knowing that it would be negligence in the driver to back out without observing all precautions, and being himself in a position to see and listen and to avert the danger, and not having done so he acquiesced and participated in the driver's negligence. In either event he was guilty of such contributory negligence as to bar his recovery.

In our opinion in the case of Townsend versus the same defendant, we set out in detail the circumstances which we think are sufficient to show that Townsend, the driver of the truck, was guilty of such contributory negligence as to bar his recovery. The opinion in that case should, therefore, be read and considered in connection with this one.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed and that plaintiff's demands be rejected and his suit dismissed at his cost.

REYNOLDS, J., dissents.